UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL MCKINLEY,

     Plaintiff,

                                  Case No.:

v.

PROGRESSIVE AMERICAN
INSURANCE COMPANY,

     Defendant.
_____/

## COMPLAINT AND REQUEST FOR JURY TRIAL

Plaintiff, MICHAEL MCKINLEY ("MCKINLEY"), hereby sues Defendant, PROGRESSIVE AMERICAN INSURANCE COMPANY ("PROGRESSIVE"), and alleges:

## GENERAL ALLEGATIONS

1.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is an action for damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

2.     At all times material hereto, MCKINLEY was and is an individual domiciled in Pasco County, and therefore, a citizen of the State of Florida.

3.     PROGRESSIVE is an insurance company organized and existing under the laws of Ohio with its principal place of business in Ohio that is licensed to do business in the State of Florida.

1

4.    This Court is a proper venue under 28 U.S.C. § 1391 because PROGRESSIVE engaged in substantial and not isolated business activity within this judicial district and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

5.    On July 19, 2018, MCKINLEY negligently operated his 2001 Subaru Legacy at or near the intersection of County Road 1 (Little Road) and County Road 524 (Ridge Road) in Port Richey, Pasco County, Florida, such that it collided with a 2017 Harley Davidson motorcycle operated by Michael Smith ("Smith") ("the Accident").

6.    Smith suffered serious injuries as a result of the Accident.

7.    The circumstances of the Accident created legal liability against MCKINLEY for damages caused to Smith.

8.    At the time of the Accident, MCKINLEY was insured against liability claims arising out of the operation and use of the 2001 Subaru Legacy under a motor vehicle liability insurance policy issued by PROGRESSIVE, having bodily injury liability coverage of $100,000 per person and $300,000 per incident ("the Policy").

9.    Attached as **Exhibit A** is what is believed to be a complete, accurate copy of the Policy.

10.    The Policy was in full force and effect on the date of the Accident.

11.    The Accident was properly reported to PROGRESSIVE, and MCKINLEY complied with all terms and conditions of the Policy.

12.    As a result of the Accident, Smith made liability claims against MCKINLEY.

13.    Smith's claims against MCKINLEY were covered by the Policy.

14.    Under the terms of the Policy and by operation of law, PROGRESSIVE had exclusive control over whether to accept a settlement offer and extinguish the risk of liability against its insured, or reject it, and continue the risk of liability against its insured.

15.    Considering all the circumstances of the case, a reasonably prudent person faced with the prospect of paying the total value of Smith's claims would have settled those claims within the limits of available coverage if it had been possible to do so.

16.    Smith offered to settle his claims against MCKINLEY within the policy limits of $100,000 multiple times, including express settlement offers sent on September 21, 2018, September 27, 2018, and October 31, 2018.

17.    PROGRESSIVE did not accept Smith's offers. Instead, PROGRESSIVE responded on November 1, 2018, stating it would not "meet [the] demand."

18.    PROGRESSIVE had multiple opportunities to settle the Smith claim.

19.    PROGRESSIVE did not offer any amount of money to Smith to settle his claim against MCKINLEY.

20.    As a result of PROGRESSIVE's failure to settle the Smith claim, Smith filed suit against MCKINLEY for his damages resulting from the Accident in a case styled *Michael Robert Smith v. Michael McKinley*, pending in the Circuit Court of the

3

Sixth Judicial Circuit, in and for Pasco County, Florida, Case Number 2018-CA-004019 ("the Underlying Action").

21.    The Underlying Action was reported to PROGRESSIVE, and MCKINLEY tendered the defense to PROGRESSIVE, permitting it to control the defense of the Smith claim, selecting the defense attorney, selecting the testifying experts, establishing the budget for defense, and allowing PROGRESSIVE to continue to control the decision whether to settle the case or not.

22.    Despite receiving even more information during the litigation further revealing the exposure to MCKINLEY from Smith's claim, PROGRESSIVE did not offer its $100,000 policy limits to resolve the claim until more than eight months into the litigation.

23.    The Underlying Action proceeded to a jury trial.

24.    On September 16, 2022, the jury returned a verdict of $3,425,000.00 in favor of Smith and against MCKINLEY. A copy of the Verdict is attached as **Exhibit B**.

25.    On April 28, 2023, after applying applicable setoffs, the trial court in the Underlying Action entered a Final Judgment in favor of Smith and against MCKINLEY for $1,935,000.00, plus interest. The Final Judgment reserved jurisdiction to award attorney's fees and additional taxable costs. A complete and accurate copy of the Final Judgment is attached as **Exhibit C**.

26.    The Final Judgment was appealed to the Second District Court of Appeals, and on May 17, 2024, that court issued an opinion affirming the Final Judgment.

27.    The Second District Court of Appeals' opinion became final upon the issuance of the Mandate on June 10, 2024. A complete, accurate copy of the Mandate is attached hereto as **Exhibit D**.

28.    On November 17, 2025, the trial court in the Underlying Action entered a Final Judgment on Attorney's Fees in favor of Smith and against MCKINLEY for $676,369.22, plus statutory interest. A complete, accurate copy of the Final Judgment on Attorney's Fees is attached as **Exhibit E**.

29.    After entry of the Final Judgment on Attorney's Fees, PROGRESSIVE voluntarily paid Smith's attorney's fees awarded against MCKINLEY in the Underlying Action.

30.    All claims, defenses, or issues raised in the Underlying Action are finally resolved and are res judicata between the parties and their privies.

<u>**INSURANCE BAD FAITH**</u>

31.    Plaintiff incorporates the above stated General Allegations as if fully set forth herein.

32.    Because of the relationship between PROGRESSIVE and its policyholder, MCKINLEY, arising from the Policy, PROGRESSIVE owed MCKINLEY non-delegable fiduciary duties with respect to the investigation,

evaluation, negotiation, settlement, and defense of the claims presented against him as a result of the Accident.

33.    Because of the relationship and contract between PROGRESSIVE and its policyholder, MCKINLEY, PROGRESSIVE had a duty to, among other things:

a.  act fairly and honestly and with due regard for the interests of MCKINLEY;

b.  affirmatively initiate and follow through with settlement negotiations as soon as it knew or should have known that there was a possibility MCKINLEY was exposed to damages in excess of the policy limits;

c.  work on MCKINLEY's behalf to avoid an excess judgment with the same haste and precision as if it were in his shoes;

d.  settle the claims against MCKINLEY when, under all the circumstances of the case, it could have and should have done so had it acted fairly and honestly, and with due regard for MCKINLEY's interests;

e.  exercise reasonable diligence and a level of care commensurate with the undertaking, in every aspect of handling the claims against MCKINLEY;

f.  adopt and implement standards for the proper investigation and handling of claims, commensurate with the needs of the types of claims reasonably anticipated that would be presented its insureds like MCKINLEY;

g.  properly train adjusters and claims personnel for the types of claims which would be undertaken by those employees;

h.  communicate with MCKINLEY candidly and with complete integrity, and keep MCKINLEY informed of the claim resolution process;

i.  fully, honestly, and promptly advise MCKINLEY concerning any settlement opportunities, of the likelihood of a judgment in excess of the policy limits, of the steps he might take to avoid the same, and of any procedures which were available to lessen the financial impact of the underlying claims upon him;

j.  avoid putting PROGRESSIVE'S own interests ahead of MCKINLEY's interests;

k.  provide an adequate, conflict-free defense for MCKINLEY; and

l.  handle the liability claims in accordance with applicable laws, statutes, and governmental and industry regulations that establish the obligations and standard of conduct for liability insurance companies handling claims, as well as PROGRESSIVE's own policies.

34.  PROGRESSIVE breached its non-delegable fiduciary duties owed to MCKINLEY in connection with PROGRESSIVE's handling and defense of the Smith claims against MCKINLEY by, *inter alia*,

a.  failing to act fairly and honestly with due regard for the interests of MCKINLEY;

b.  failing to affirmatively initiate and follow through with settlement negotiations as soon as it knew or should have known that there was a

possibility that MCKINLEY was exposed to damages in excess of the policy limits;

c.  failing to work on MCKINLEY's behalf to avoid an excess judgment with the same haste and precision as if it were in the insured's shoes;

d.  failing to settle the Smith claims against MCKINLEY, when, under all the circumstances of the case, it could have and should have done so had it acted fairly and honestly, and with due regard for MCKINLEY's interests;

e.  failing to exercise reasonable diligence and a level of care commensurate with the undertaking, in every aspect of handling the claims against MCKINLEY;

f.  failing to adopt and implement standards for the proper investigation and handling of claims, commensurate with the needs of the types of claims reasonably anticipated that would be presented against its insureds;

g.  failing to properly train adjusters and claims personnel for the types of claims which would be undertaken by those employees;

h.  failing to communicate with MCKINLEY candidly and with complete integrity, and keep him informed of the claim resolution process;

i.  failing to fully, honestly, and promptly advise MCKINLEY concerning any settlement opportunities, of the likelihood of a judgment in excess of the policy limits, of the steps he might take to avoid the same, and of any

8

procedures which were available to lessen the financial impact of the underlying claims upon him;

j.  putting PROGRESSIVE's own interests ahead of MCKINLEY's;

k.  failing to provide an adequate, conflict-free defense for MCKINLEY;

l.  failing to handle the liability claims in accordance with applicable laws, statutes, governmental and industry regulations that establish the obligations and standard of conduct for liability insurance companies handling claims, as well as PROGRESSIVE'S own policies.

35.  As a direct, proximate and foreseeable result of PROGRESSIVE's breaches of these duties owed, MCKINLEY suffered the entry of the Final Judgment.

36.  By operation of law, including section 627.428, Florida Statutes (2018), PROGRESSIVE will be obligated to pay Plaintiff's attorneys' fees upon the successful conclusion of this action.

37.  All conditions precedent to Plaintiff's rights to bring this action have occurred or been excused.

WHEREFORE, Plaintiff, MICHAEL MCKINLEY, demands judgment against PROGRESSIVE AMERICAN INSURANCE COMPANY, in excess of $75,000.00, including all unpaid and unsatisfied amounts of the Final Judgment entered in the Underlying Action in favor of Michael Smith and against MICHAEL MCKINLEY, and interest on those elements of damages upon which interest may be recovered, plus costs of this action and attorneys' fees, applicable pre-judgment

interest,  and such other relief as the Court may deem appropriate, and demands a trial by jury on all issues so triable.

Respectfully submitted this 29th day of January, 2026.

/s/ *Angela Rodante*
ANGELA E. RODANTE
Florida Bar No.:092509
NATALIE I. SHOEMAKER
Florida Bar No.: 1025707
SWOPE, RODANTE P.A.
1234 5th Avenue East
Tampa, Florida 33605
P: (813)273-0017 / F:(813)223-3678
Team3eservice@swopelaw.com
eservice@swopelaw.com
*Attorneys for Plaintiffs*